# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**GICU RAUTU,** an individual,

                Plaintiff,

    vs.

**U.S. BANK, N.A.,** a foreign banking
institution,

                Defendant.

_____/

No. 2:12-cv-12961
Hon. Gerald E. Rosen

## OPINION AND ORDER GRANTING DEFENDANT'S
### MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Gicu Rautu filed this lawsuit in Oakland County Circuit Court on May 31, 2012. Pursuant to 28 U.S.C. § 1332, Defendants U.S. Bank ("USB") and Indigo Financial Group, Inc. removed the action to this Court on July 6, 2012. Plaintiff's Complaint contains six counts relating to the mortgage loan executed between Plaintiff and Defendant USB on January 22, 2008. These counts are: (i) Fraud and Misrepresentation; (ii) Common Law Rescission and/or Reformation; (iii) Quiet Title; (iv) Violation of the Federal Truth in Lending Act and Federal Reserve Regulation Z; (v) violation of the Credit Repair Organizations Act; and (vi) violation of the Michigan Mortgage Brokers, Lenders, and Servicers Act.

Defendants filed the present Motion to Dismiss on July 11, 2012. Plaintiff responded on August 14, 2012, and Defendants replied on August 28, 2012.

1

Defendant Indigo Financial Group was dismissed from the case by stipulation and order on January 29, 2013, leaving USB as the sole Defendant.  Because Count VI applied only to Indigo Financial, that count is also dismissed.

## II. FACTUAL BACKGROUND

This case began when Plaintiff used a Uniform Residential Loan application to apply for a $410,000 mortgage at a fixed rate of 7.800%.  There is no indication of when this application was made, and the record contains no evidence of any communications between Defendant USB and Plaintiff regarding this application.  However, on January 22, 2008, Plaintiff executed an Adjustable Rate Note and Mortgage for $410,000 in favor of USB.  This Note stated that Plaintiff's interest rate would be fixed at 7.800% until February 2013, at which point it the interest rate would be subject to change on an annual basis.  Plaintiff signed this Note, as well as a Truth-in-Lending Act ("TILA") Disclosure Statement, which stated (i) that the loan had a variable interest rate and (ii) that the variable rate disclsoures had been provided at an earlier date.

In late 2010 -- more than two years before the variable rate feature of the loan would become active -- Plaintiff fell behind on his mortgage payments.  On April 25, 2011, Plaintiff made a payment to USB that satisfied the arrearage on the loan through February 2011.  However, Plaintiff was still behind on his payments, and entered into a Home Affordable Modification Program ("HAMP") trial period plan in June 2011.  Plaintiff successfully completed the trial period, and executed a

modified loan agreement with Defendant on August 9, 2011. This modification set the unpaid balance of the loan at $432,169.75 and changed the interest rate to a 4.800% fixed rate for the remainder of the term.

After making his first payment under the modified loan agreement -- dated September 28, 2011 -- Plaintiff again defaulted and has made no payments since. Plaintiff initially filed suit in Oakland County Circuit Court on October 27, 2011, claiming that he was deceived at the time of loan closing into signing an adjustable rate loan, when he intended to enter into a fixed rate loan. After being removed to this Court, the parties stipulated to dismiss the case without prejudice. Plaintiff filed the present action on May 31, 2012, again alleging that he was a victim of Defendant USB's "bait and switch" at the time of closing, which deceived him into entering an adjustable rate mortgage agreement. Defendants removed the case to this Court on July 6, 2012, and have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## III. DISCUSSION

### A.    Rule 12(b)(6) Standard

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the

3

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

If the well-pled facts in Plaintiff's Complaint -- accepted as true -- are insufficient for Plaintiff to recover on a claim, that claim must be dismissed. *Iqbal*, 556 U.S. at 680 ("Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed.") (citing *Twombly*, 550 U.S. at 570).

## B.    Plaintiff's Claims

Of Plaintiff's six original counts, five apply to USB, the sole remaining Defendant in this case. Each count will be addressed in turn.

4

### 1.      Fraud and Misrepresentation

Count 1 alleges that Defendant misrepresented the nature of the loan up until the time of closing, and that Plaintiff reasonably relied upon those misrepresentations to its detriment.  To succeed on a claim for fraud, Plaintiff must plead and prove that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27 (1998).  Indeed, in pleading fraud, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

The Sixth Circuit has interpreted Rule 9(b) as requiring that Plaintiff describe specific statements, identify the speaker, specify when and where the statements were made, and explain why the statements were fraudulent.  *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008).  "The threshold test is whether the complaint places the [D]efendant on sufficient notice of the misrepresentation, allowing the [Defendant] to answer, addressing in an informed way the [Plaintiff's] claim of fraud."  *Kashat v. Paramount Bancorp, Inc.*, No. 09-10863, 2010 WL 538295, at *4 (E.D. Mich. Feb. 10, 2010).  When a party fails to meet its Rule 9(b) burden, dismissal is warranted.

5

Plaintiff's Complaint fails to adequately plead the circumstances constituting fraud. It offers no "material representations" by Defendant upon which Plaintiff could have reasonably relied. The only "representation" offered by Plaintiff is its loan application, which was signed by Plaintiff, not Defendant. This falls well short of Rule 9(b)'s requirement that Plaintiff's describe the specific statements made by Defendant, the speaker, the time and place of the statements, and why they were fraudulent.

Even if Plaintiff pled fraud with sufficient specificity, the allegations in the Complaint fail to state a claim for two reasons. First, the explicit terms of the Note and TILA render any reliance on Defendant's prior statements unreasonable. Plaintiff signed no less than three documents that clearly indicated he was entering into an adjustable rate mortgage. Def. Br. Ex. A, B. Indeed, two of these documents -- the "Adjustable Rate Note" and the "Adjustable Rate Rider" -- put the Plaintiff on notice that he is entering an adjustable rate agreement in the titles themselves. Plaintiff's decision to sign these documents makes it unreasonable to rely on prior statements by Defendant. *See Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 658 (6th Cir. 2000) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement.").

Finally, Plaintiff's claim for fraud and misrepresentation must fail because, even if Defendant did trick Plaintiff into entering the adjustable rate loan agreement, Plaintiff cannot demonstrate that Defendant's alleged

6

misrepresentation caused him any harm. Plaintiff requested a 7.800% fixed rate loan. The terms of the mortgage fixed his interest rate at 7.800% until February 2013. Thus, when Plaintiff defaulted in late 2010, he still had over two years at his preferred, fixed interest rate. Further, on August 9, 2011, Plaintiff received a loan modification that permanently transformed his mortgage into a 4.800% fixed rate loan, 3% below the 7.800% interest rate Plaintiff claims to prefer. Since Plaintiff defaulted on the mortgage before the adjustable rate provision took effect, he cannot demonstrate that he was harmed by Defendant's alleged "bait and switch."

Because Plaintiff (i) failed to plead fraud with sufficient specificity, (ii) was unreasonable in relying on Defendant's alleged misrepresentations, and (iii) cannot demonstrate any harm arising from said misrepresentations, Defendant's motion to dismiss Count 1 is GRANTED.

### 2. Rescission and / or Reformation

Count 2 alleges "Rescission and/or Reformation." However, "rescission and reformation are not separate causes of action; rather, they are equitable remedies." *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 847 (E.D. Mich. 2010). Because Count 2 fails to state a cause of action upon which relief can be granted, Defendant's motion to dismiss is GRANTED.

### 3. Quiet Title

Defendant argues that Count 3 of Plaintiff's Complaint -- Quiet Title -- is barred by the doctrine of unclean hands. "A suit to quiet title or remove a cloud on

a title is one in equity." *McKay v. Palmer*, 170 Mich. App. 288, 293, 427 N.W.2d 620 (1988).  A court acting in equity "looks at the whole situation and grants or withholds relief as good conscience dictates." *Id.* (quoting *Hunter v. Slater*, 331 Mich. 1, 7, 49 N.W.2d 33 (1951)).  A party seeking the aid of equity must come in with clean hands. *Rose v. Nat'l Auction Group*, 466 Mich. 453, 462-463, 646 N.W.2d 455 (2002).  "The clean hands maxim 'is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Id.* (quoting *Stachnik v. Winkel*, 394 Mich. 375, 382, 230 N.W.2d 529 (1975)).  The clean hands doctrine applies to quiet-title actions. *McKay*, 170 Mich. App. at 293.

Plaintiff's failure to honor the terms of the loan agreement bars him from asserting a quiet-title action.  In *Yuille v. American Home Mortgage Servs.*, the Sixth Circuit found that the district court properly applied the doctrine of unclean hands where plaintiff "received $3.6 million in exchange for the note and mortgage, failed to pay that debt as he agreed, and then sought judicial assistance in avoiding his contractual obligations."  483 Fed. App'x 132, 135 (6th Cir. May 29, 2012).  Plaintiff is barred for the same reasons, and Defendant's motion to dismiss is GRANTED on Count 3.

### 4.    Violation of the Federal Truth-in-Lending Act and Federal Reserve Regulation Z

Plaintiff's allegation in Count 4 that Defendant failed to provide the disclosures required by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640, is barred by the statute of limitations. The TILA provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The date of the alleged violation in this case is January 22, 2008: the day Plaintiff signed the mortgage and TILA Disclosure Forms. Because more than one year has passed since January 22, 2008, the statute of limitations has expired on any TILA or Regulation Z claim. Defendant's motion to dismiss Count 4 is consequently GRANTED.

### 5.    Violation of the Credit Repair Organizations Act

Finally, Count 5 alleges that Defendant violated 15 U.S.C. § 1679, the Credit Repair Organizations Act ("CROA"), by misrepresenting Plaintiff's income on his loan application. The statute provides, in pertinent part:

(a)    In general

No person may --

     (1)    make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to --

  (A)  any consumer reporting agency (as defined in section 1681a(f) of this title); or

  (B)  any person --

    (i)  who has extended credit to the consumer; or

    (ii)  to whom the consumer has applied or is applying for an extension of credit;

15 U.S.C.A. § 1679b.

  Defendant argues that the CROA does not apply to banks, which are not included under the definition of "credit reporting agencies" under the act. *See* 15 U.S.C. § 1679a(3)(B)(iii) (stating that the term "Credit repair organization . . . does not include . . . any depository institution"). Plaintiff contends that the section does apply to Defendant because § 1679b is not limited to credit repair organizations, but rather states that "no *person* may . . . make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading[.]" (emphasis added); *see Poskin v. TD Bank North America, N.A.*, 687 F. Supp. 2d 530 (W.D. Penn. 2009) ("Congress uses both the terms 'person' and 'credit repair organization' in § 1679b, indicating that the terms are not to be interchangeably read."). Defendant counters (i) that the term "person" does not refer to any person, but rather is limited to persons affiliated with a credit repair organization, and (ii) that Defendant cannot be liable for making a false representation to itself.

  Defendant's limited reading of "person" is correct. The term "person" is clarified in § 1679b(a)(1), which prohibits making (i) any untrue or misleading statement, or (ii) any statement "which, upon exercise of reasonable care, should be

10

known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading."  First, it is clear that "credit repair organization, officer, employee, agent, or other person" modify the person making the statement -- rather than the recipient of the statement -- because the following subsection addresses to whom such statements cannot be made.  *See* § 1679b(a)(1) ("No person may -- (1) make any statement . . . which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity *to* -- (A) any consumer reporting agency . . . ; or (B) any person -- (i) who has extended credit to the consumer; or (ii) to whom the consumer has applied or is applying for an extension of credit[.]") (emphasis added).

Having established that the persons who, upon exercise of reasonable care, should have known that the statement was untrue or misleading are those persons making the statement, the next question is the definition of those persons under the statute.  Applying the *ejusdem generis* canon of construction, items in a list must be read to be of the same general nature as other items in the same list.  The first four categories of persons governed by the statute -- the credit repair organization itself, its officers, its employees, and its agents -- are all affiliates of the credit repair organization.  Thus, the final group in the list -- "other person" -- is best understood as a catch-all to ensure that other persons associated with the credit repair organization would not escape liability based on the technical definition of their affiliation with the organization.  As the Northern District of Florida stated in *Lopez v. ML#3, LLC*:

11

It is true, of course, that the Act says that "[n]o person" may perform the prohibited acts. Congress undoubtedly knows the difference between a "credit repair organization" and a "person" and presumably used the broader term advisedly. It apparently did so, however, not to expand the Act beyond the credit-repair context, but to ensure that a person who made a false statement in that context would not escape liability based on the person's relationship to the credit-repair organization or based on the person's role in the transaction at issue. The canons that a word in a statute should be given its plain meaning and that different words in a statute ordinarily should be given different meanings do not require a broader reading of this statute.

607 F. Supp. 2d 1310, 1312-14 (N.D. Fla. 2009).

Indeed, such a reading is consistent with the broader purpose of the statute, as provided in § 1679(b):

(b)    Purposes

The purposes of this subchapter are --

    (1)    to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

    (2)    to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

Interpreting § 1679b as applicable to persons not affiliated with credit repair organizations would expand the scope of the statute beyond its stated purpose. Consequently, Defendant is not a "person" under the statute, and is not subject to its regulation.

Even if Defendant was a "person" under the statute, Plaintiff's claim fails for two additional reasons. As discussed above, the statute contemplated an untrue or misleading statement made to a third-party. *See* § 1679b(a)(1) ("No person may --

12

(1) make any statement . . . which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity *to* -- (A) any consumer reporting agency . . . ; or (B) any person -- (i) who has extended credit to the consumer; or (ii) to whom the consumer has applied or is applying for an extension of credit[.]") (emphasis added).   In this case, Defendant's alleged misrepresentation on the loan application was made to itself.  It is difficult to see how such a statement could have caused harm under the act.

Finally, not only was Plaintiff's loan application not signed by Defendant, but the application does not even contain a statement of Plaintiff's income.  While this Court is required to view all well-pled facts in favor of Plaintiff, it "need not accept as true legal conclusions or unwarranted factual inferences."  *DirecTV,* 487 F.3d at 476 (internal quotation omitted).  Further, those facts must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Because the loan application does not state Plaintiff's income, this Court cannot reasonably infer that Defendant misrepresented Plaintiff's income on that application.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, Defendant's motion to dismiss is GRANTED on Count 5.

## IV. CONCLUSION

Although it is generally the practice of this Court to provide an opportunity to amend when a plaintiff is faced with a dismissal that is readily curable, here, no amendment is capable of curing the defects in Plaintiff's pleadings.

Thus, for all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

**Dated:  March 7, 2013**            **s/Gerald E. Rosen**
                                     **GERALD E. ROSEN**
                                     **CHIEF JUDGE, UNITED STATES**
**DISTRICT COURT**


**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Thursday, March 7, 2013, by electronic and/or ordinary mail.**

                                     **s/Julie Owens**
                                     **Case Manager, (313) 234-5135**

14